IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL SIMMONS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., a Connecticut corporation,<br><br>*Defendant*. | Case No. 3:15-cv-00317-SRU<br><br>Judge Stefan R. Underhill |

**PLAINTIFF'S MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION**

  This matter readily satisfies the prerequisites to class certification. Through a common course of conduct, Defendant Charter Communications, Inc. ("Charter") obtained the telephone numbers of thousands of consumers nationwide—including Plaintiff and a proposed Class and Subclass of consumers (defined below)[1]—and made unsolicited telephone calls to the cellular phones of those consumers to market and sell its internet and phone products and services. Through that conduct, Charter not only invaded their personal privacy, but repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted specifically to protect consumers from unsolicited telephone calls exactly like those alleged in this case.

  For these reasons and as discussed further herein, the proposed Class and Subclass readily satisfy the prerequisites to certification under Federal Rule of Civil Procedure 23, and the instant motion should therefore be granted in its entirety. Notwithstanding, Plaintiff respectfully requests that the Court: (1) enter and reserve

---

[1]  Unless otherwise stated, all reference to the "Class" include the Subclass as well.

1

ruling on Plaintiff's Motion for and Memorandum in Support of Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a supplemental memorandum in support of his Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and (5) provide all other and further relief that the Court deems reasonable and just.

## II.     FACTUAL BACKGROUND

### A.     Facts Applicable to All Members of the Putative Class and Subclass.

Defendant Charter is a well-known cable, Internet and phone service provider. (*See* Class Action Complaint and Demand for Jury Trial, Dkt. 1 ("Compl.") ¶ 9.) In an effort to sell its products and services, Defendant utilizes widespread telemarketing efforts. (*Id.* ¶ 10.) Unfortunately, in pursuit of these efforts, Defendant cast its net too wide and placed unsolicited telemarketing calls to consumers' cellular telephones nationwide. (*Id.*) Defendant made these unsolicited telephone calls without consumers' prior consent and by utilizing an automatic telephone dialing system ("ATDS"). (*Id.* ¶ 11.) Worse still, many of those telemarketing calls were made to cell phones registered on the national do-not-call registry. (*Id.* ¶ 3.)

Neither Plaintiff nor the other members of the proposed Class ever provided their telephone numbers to Defendant for the purpose of receiving telemarketing calls (or any other purpose). (*Id.*) Defendant repeatedly made telemarketing calls from a variety of phone numbers, including "(614) 516-0454." (*Id.* ¶ 12.) If or when a call recipient would answer these calls, he or she would be greeted (after a long pause) by a telemarketer offering Charter's residential services and "exciting new offers." (*Id.*) In instances where

a consumer stated he or she was not interested, and requested not to be called again, the calls would simply resume shortly thereafter. (*Id.*) Calling the number "(614) 516-0454" leads to a telemarketer promoting "Charter residential sales." (*Id.* ¶ 13.)

In making the phone calls at issue in this Complaint, Defendant utilized an automatic telephone dialing system. (*Id.* ¶ 14.) Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, en masse, in an automated fashion without human intervention. (*Id.*) Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention). (*Id.*) Plaintiff and members of the Class did not request or consent to be called by Defendant. (*Id.* ¶ 15.)

### B. Facts Applicable to Plaintiff Simmons.

In or around January 2015, Plaintiff Simmons received numerous telephone calls (at least four) on his cellular telephone from the phone number "(614) 516-0454." (*Id.* ¶ 16.) Specifically, Plaintiff received calls on January 9th, 15th, 19th, and 20th. (*Id.*) Plaintiff answered several of these calls and spoke with a live operator who was promoting "exciting new offers" for Charter residential service. (*Id.* ¶ 17.) Each time he answered a call there was a long pause before he was connected to a live operator, indicating the use of an ATDS. (*Id.*)

Each time Plaintiff spoke with Defendant's telemarketers, he demanded that the calls stop. (*Id.* ¶ 18.) Plaintiff indicated that he was not interested in the service and that his cellular telephone number was on the National Do Not Call Registry. (*Id.*) Plaintiff is

3

not, and never has been, a Charter customer. (*Id.* ¶ 19.) Plaintiff did not provide his cellular telephone number to Defendant, and as such, did not provide any form of consent to be called by Defendant. (*Id.* ¶ 20.)

Plaintiff's cellular telephone number has been listed on the National Do Not Call Registry since November 15, 2010. (*Id.* ¶ 21.) Plaintiff registered his cellular telephone number for the express purpose of avoiding telemarketing calls just like those alleged here. (*Id.*) Defendant was and is aware that the above-described telephone calls were being made on a widespread basis, and that the telephone calls were being made to consumers who had not consented to receive them. (*Id.* ¶ 23.)

    **C.**    **The Proposed Class and Subclass.**

As a result of Defendant's conduct described above, Plaintiff Simmons brought this lawsuit and now seeks certification of a class and subclass of similarly situated individuals, defined as follows:[2]

> **Class**: All persons in the United States who received a telephone call: (1) on a cellular telephone number; (2) from (or on behalf of) Charter Communications, Inc., that was made for the purpose of selling Charter Communications products and services; and (3) for whom Defendant had no record of prior express written consent to make such telephone calls at the time they were made.
>
> **Subclass**: All persons in the United States who received more than one telephone call: (1) on a telephone number; (2) which had been listed on the National Do Not Call Registry for at least thirty days; (3) from (or on behalf of) Charter Communications, Inc., that was made for the purpose of selling its products and services; and (4) for whom Defendant had no

---

[2] The following persons are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

>record of express consent to make such telephone calls at the time they
>were made.

(Compl. ¶ 24.) As demonstrated below, the proposed Class and Subclass meet each of the prerequisites for certification under Rule 23 and therefore, the instant motion should be granted in its entirety.

### III.   THE PROPOSED CLASS AND SUBCLASS SATISFY EACH OF THE PREREQUISITES FOR CERTIFICATION.

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) has been satisfied. Fed. R. Civ. P. 23. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

In this case, Plaintiff seeks certification of the proposed Class and Subclass under both Rule 23(b)(2) and 23(b)(3). In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2). Similarly, in order to certify a class under Rule 23(b)(3), there must be questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and the class mechanism must be superior to other available

5

methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As such, in ruling on a motion for class certification the court accepts the factual allegations of the Complaint as true. *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978). The Second Circuit has held that Rule 23 should be construed liberally not restrictively, and courts are to adopt a standard of flexibility. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

As explained further below, the proposed Class and Subclass in this case meet all of the prerequisites of Rules 23(a), (b)(2), and (b)(3), and therefore can be properly certified.

      A.      **The Numerosity Prerequisite is Satisfied.**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no minimum number of plaintiffs required for a finding of numerosity under Rule 23(a). *Martin v. Shell Oil Co.*, 198 F.R.D. 580, 590 (D. Conn. 2000). However, within the Second Circuit "[n]umerosity is presumed at a level of 40 members." *Penn. Public Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *See also Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). Plaintiffs are not required to show the exact number of proposed class members, only a reasonable estimate of the size of the class. *In re PE Corp. Sec. Litig.*, 228 F.R.D. 102, 107 (D. Conn. 2005). Additionally, "'courts may make common sense assumptions to support a finding of numerosity.'" *Id.* at 107 (quoting *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y.2001)).

methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As such, in ruling on a motion for class certification the court accepts the factual allegations of the Complaint as true. *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978). The Second Circuit has held that Rule 23 should be construed liberally not restrictively, and courts are to adopt a standard of flexibility. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

As explained further below, the proposed Class and Subclass in this case meet all of the prerequisites of Rules 23(a), (b)(2), and (b)(3), and therefore can be properly certified.

    A.    **The Numerosity Prerequisite is Satisfied.**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no minimum number of plaintiffs required for a finding of numerosity under Rule 23(a). *Martin v. Shell Oil Co.*, 198 F.R.D. 580, 590 (D. Conn. 2000). However, within the Second Circuit "[n]umerosity is presumed at a level of 40 members." *Penn. Public Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *See also Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). Plaintiffs are not required to show the exact number of proposed class members, only a reasonable estimate of the size of the class. *In re PE Corp. Sec. Litig.*, 228 F.R.D. 102, 107 (D. Conn. 2005). Additionally, "'courts may make common sense assumptions to support a finding of numerosity.'" *Id.* at 107 (quoting *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y.2001)).

Here, Plaintiff alleges—and discovery will show—that Charter Communications made unauthorized commercial calls to thousands of consumers (using an ATDS) who fall into the definition of the Class, and that many of those calls were made to numbers listed on the National Do Not Call Registry. (Compl. ¶¶ 11, 25, 43–46.); *see Kallus v. General Host Corp.*, 1988 WL 124074, at *2 (D. Conn. 1988) (numerosity requirement was satisfied where plaintiff alleged, and defendant did not dispute, that there were "hundreds, if not thousands of members of the class"); Alba Conte & Herbert Newberg, Newberg on Class Actions § 3:5, 243–46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met."). Accordingly, the proposed Class satisfies the numerosity requirement.[3]

### B. The Proposed Class and Subclass Share Common Questions of Law and Fact.

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To meet the commonality requirement, the named representative is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart*, 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common question . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* "Rule 23(a)(2) requires only that questions of law or

---

[3] To the extent the Court requires additional details regarding the number of members in the Class, such information may be readily obtained through discovery and Defendant's records.

fact be shared by the prospective class. It does not require that all questions of law or fact raised be common." *Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 91 (D. Conn. 2001) (internal quotations omitted).

In this case, all members of the Class and Subclass share claims arising out of Defendant's uniform conduct, that are based on the same legal theories, and that implicate the same common questions or issues of fact that predominate over issues affecting only individual members. Specifically, those common factual and legal issues for the Class include, but are not limited to: (1) whether Defendant used an ATDS to make the calls, (2) whether Defendant had the Class members' consent to place those calls, (3) whether Defendant's calls constitute violations of the TCPA, and (4) whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct. Likewise, for the Subclass, common questions include: (1) whether Defendant's calls were made for telemarketing purposes, (2) whether the Class members had registered their phone numbers with the National Do Not Call Registry, and (3) whether Defendant instituted procedures that complied with the regulatory minimum standard for maintaining a list of persons who request not to receive telemarketing calls from them.

Accordingly, the commonality requirement is also satisfied.

### C. Plaintiff's Claims are Typical of the Class's Claims.

Typicality—the next prerequisite under Rule 23—requires that Plaintiff's claims be typical of those of the other members of the Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to commonality, as it is satisfied if the plaintiff's claim arises out of "the same practice or course of conduct that gives rise to claims of other class members, and that the claims are based on the same legal theory."

*Rivera v. Fair Chevrolet Geo Partnership*, 165 F.R.D. 361, 363 (D. Conn. 1996). Factual differences will not render a claim atypical, a common legal theory predominates and satisfies the requirement of typicality. *Id.* (citing *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D.Ill.1980)).

In this case, Plaintiff and the proposed members of the Class and Subclass were each subjected to Defendant's common course of conduct. That is, Plaintiff and the Class members each received unauthorized commercial calls from Defendant (using an ATDS) despite the fact that they had never consented to receive those calls. (Compl. ¶¶ 2, 9–23.) And for members of the Subclass, all were called on numbers listed on the National Do Not Call Registry. (*Id.* ¶ 46.) As a result of Defendant's conduct, Plaintiff and the other members of the Class suffered the same injuries (in the form of the violation of their statutory rights under the TCPA) and are entitled to an identical calculation of statutory damages per call.

Accordingly, Rule 23(a)(3)'s typicality prerequisite is easily satisfied.

**D.     The Adequacy of Representation Prerequisite is Satisfied.**

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, the plaintiff must demonstrate (1) the absence of any "potential conflicts with the prospective class members," and (2) "the class counsel is qualified, experienced, and able to vigorously prosecute the interests of the class." *Duprey v. Conn. Dept. of Motor Vehicles*, 191 F.R.D. 329, 337 (D. Conn. 2000) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

In this case, Plaintiff has the same interests as the proposed Class members. They

9

each received unauthorized commercial telemarketing calls from Defendant as a result of its uniform course of conduct. (Compl. ¶¶ 2, 10–12, 17, 21, 44.) Thus, Plaintiff suffered the same injury, has the same claims available to him, and has no interests antagonistic to those of the Class. (*Id.* ¶ 46.) He will fairly and adequately protect the interests of the Class and his pursuit of the instant action demonstrates as much. (*Id.*)

Similarly, proposed class counsel are well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action. *See In re Netflix Privacy Litig.*, No. 11-cv-00379-EJD, Dkt. 059 (N.D. Cal. 2011) (appointed the Edelson firm as Interim Class Counsel in adversarial leadership dispute, during which the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *Harris, et al. v. comScore, Inc.*, No. 11-cv-5807, 2013 WL 1339262, Dkt. 186 (N.D. Ill. Apr. 2, 2013) (the Edelson firm achieved adversarial certification in the largest-ever privacy class action); (*see also* Firm Resume of Edelson PC, attached as Exhibit 1).

More importantly, proposed class counsel have prosecuted many successful TCPA cases and have litigated "some of the largest consumer class actions in the country on this issue." *Ellison v. Steven Madden*, No. 11-cv-05935, Dkt. 073 at 9 (C.D. Cal. May 7, 2013); *see also Miller v. Red Bull*, No. 12-cv-04961 (N.D. Ill. Aug. 12, 2013) (proposed counsel class counsel appointed class counsel in nationwide class action settlement of TCPA claims); *Lozano v. Twentieth Century Fox Films Corp.*, No. 09-cv-6344 (N.D. Ill. Apr. 15, 2011) (same); *Henrichs v. Wells Fargo Bank, N.A.*, No. 13-cv-

05434 (N.D. Cal.); *Ossola v. American Express Co.*, No. 13-cv-04836 (N.D. Ill.); *Balschmiter v. TD Auto Fin., LLC*, No. 13-cv-01186 (E.D. Wisc.); *Huhn v. Consolidated Travel Holdings Group, Inc., et al.*, No. 15-cv-2998 (D.N.J); *Carrera v. Major Energy Servs., LLC et al.*, No. 15-cv-3208 (D.N.J.). As they did in those cases, proposed class counsel have already diligently investigated and dedicated substantial resources to the investigation of the claims at issue in this action, and they will continue to do so throughout its pendency.

As such, Plaintiff and his counsel have and will continue to adequately represent the Class, and Rule 23's adequacy prerequisite is met as well.

### E. The Proposed Class and Subclass Satisfy Rule 23(b)(2).

Once the prerequisites of Rule 23(a) are satisfied, one of the three subsections of Rule 23(b) must be satisfied as well. Here, Plaintiff seeks certification of the proposed Class under Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Brown v. Kelly*, 609 F.3d 467, 477 (2d. Cir. 2010) (quoting Fed. R. Civ. P. Rule 23(b)(2)) (internal quotations omitted). The requirement that the defendant act on grounds generally applicable to the 23(b)(2) class, like the whole of Rule 23, is to be liberally construed so as to favor the maintenance of class actions where appropriate. *Pasternak v. Colonial Equities re Colonial P'ship Litig.*, 1993 WL 306526 (D. Conn. 1993) (citing *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 179 (2d Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S. Ct. 675 (1991)).

11

There should be no question that Defendant acted on grounds generally applicable to the Class in whole. Indeed, as described in more detail above, Defendant had a standardized practice of placing unauthorized telemarketing calls to each member of the Class. (Compl. ¶¶ 2, 10–12, 17, 21, 44.) In the end, Defendant's conduct did not vary significantly from Class member to Class member and therefore, final injunctive relief would (and is necessary to) protect Plaintiff and the other members of the Class and Subclass from such conduct in the future. As such, the prerequisites of Rule 23(b)(2) are met as well.

### F.     The Proposed Class and Subclass Also Satisfy Rule 23(b)(3).

Plaintiff seeks certification of the Class and Subclass under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As discussed below, this case readily meets both of these requirements.

#### i.     Common Questions of Law and Fact Predominate.

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation." The Rule 23(b)(3) "'predominance inquiry' is meant to 'tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wal-Mart*, 131 S. Ct. at 2566 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This inquiry requires courts to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class. *See id*.

Here, the common questions set forth above are at the heart of this litigation. The claims of Plaintiff and all other members of the Class arise from Defendant's standardized conduct of making unauthorized commercial calls to their cellular telephones—using the same automatic telephone dialing equipment—and never first obtaining consent to place the calls. (Compl. ¶¶ 32–36.) Likewise for the Subclass, which suffered from Defendant's uniform failure to comply with the National Do Not Call Registry. (Compl. ¶¶ 42–46.) Moreover, the answers to these questions are necessarily subject to common proof, primarily from information to be found within Defendant's own records. *See Wal-Mart*, 131 S. Ct. at 2551 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (internal quotations omitted). That is, evidence of the calls themselves, how Defendant made them and to what phone numbers they were made will come from within Defendant's own records. Thus, the only claims at issue in this case—Defendant's alleged violation of the TCPA—simply will not require individual proof such that class treatment would be inappropriate.[4]

For all of these reasons, Rule 23(b)(3)'s predominance requirement is satisfied.

      ii.    <u>The Class Action Mechanism is Superior to Other Methods for the Litigation of this Matter</u>.

Finally, Rule 23(b)(3) requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3). The instant class action is superior to other available methods for the fair

---

[4] Additionally, records of the identity of each member of the putative Class and Subclass will be within Defendant's possession and control.

13

and efficient adjudication of Plaintiff's and the Class's claims.

Absent class treatment in this case, each individual member of the Class and Subclass would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Moreover, there is no indication that members of the Class and Subclass have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. Furthermore, class certification will promote consistency of rulings and judgments, giving all parties the benefit of finality.

Accordingly, the superiority requirement is also satisfied.

## IV. CONCLUSION

For the reasons stated above, and which will be borne out of discovery, this case is appropriate for class certification. Accordingly, Plaintiff Michael Simmons, individually and on behalf of the proposed Class and Subclass, respectfully requests that the Court: (1) enter and reserve ruling on his Motion for Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant him leave to file an amended motion upon the conclusion of discovery relating to certification issues; (4) grant his Motion for Class Certification after full briefing; and (5) provide all other and further relief that the Court deems reasonable and just.[5]

                                                                                                 Respectfully submitted,

---

[5] Plaintiff respectfully reserves the right to amend the definitions of the proposed Class and Subclass at the conclusion of class-wide discovery, subject to Court approval.

                                                **MICHAEL SIMMONS**, individually and on behalf of all others similarly situated,

Dated: June 23, 2015                          By: s/ J. Dominick Larry
                                                                               One of Plaintiff's Attorneys

Benjamin H. Richman (phv07173)
brichman@edelson.com
J. Dominick Larry (phv07148)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Jonathan M. Shapiro (ct24075)
jshapiro@shapirolawofficesct.com
SHAPIRO LAW OFFICES, LLC
104 Court Street
Middletown, Connecticut 06457
Tel: 860.347.3325
Fax: 860.347.3874

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

      I certify that on June 23, 2015, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the court's CM/ECF system.

                                          s/ J. Dominick Larry