**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MICHAEL SIMMONS, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>     *v.*<br><br>CHARTER COMMUNICATIONS, INC., a Connecticut corporation,<br><br>    *Defendant*. | Case No. 3:15-cv-00317-SRU |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**INTRODUCTION** ...................................................................................................1

**FACTUAL BACKGROUND** ...................................................................................2

**ARGUMENT** ..........................................................................................................7

I.     **Charter's failure to plead the appropriate safe harbor defense and its failure to satisfy its requirements in any event mean that it was prohibited from making telemarketing calls to Simmons at all** ..........................................8

     A.     **By its own admission, Charter lacks any "comprehensive written policy" for maintaining a do-not-call list** ...................................9

     B.     **Empereon did not properly record and effectuate Simmons's first do-not-call request** ...................................................................11

II.    **Because Charter does not claim that its calls to Simmons were in error, it cannot avail itself of the safe harbor for calling Simmons while his number was listed on the Do-Not-Call Registry** ...............................................12

III.   **Charter failed to plead the TCPA's statutory affirmative defense in its Answer, and cannot meet its requirements in any event** ...............................15

**CONCLUSION** .....................................................................................................17

# **TABLE OF AUTHORITIES**

**UNITED STATES COURT OF APPEALS CASES:**

*Bryant v. Maffucci*, 923 F.2d 979 (2d Cir. 1991).................................................6

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520 (2d Cir. 2004) ......................14

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570 (2d Cir. 1994)............14

**UNITED STATES DISTRICT COURT CASES:**

*Gauba v. Travelers Rental Co., Inc.*, No. 12-cv-1713,
    2015 WL 1004309 (D. Conn. Mar. 5, 2015) ....................................................6, 11

*Odyssey Reinsurance Co. v. Cal-Regent Ins. Servs. Corp.*, No. 14-cv-458,
    2015 WL 4978684 (D. Conn. Aug. 20, 2015) .................................................8, 14

*Presti v. Dellacamera*, No. 08-cv-427, 2010 WL 466006 (D. Conn. Feb. 4, 2010)..........14

*Roylance v. ALG Real Estate Servs., Inc.*, No. 14-cv-2445,
    2015 WL 1522244, (N.D. Cal. Mar. 16, 2015)......................................................9

*Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, No. 13-cv-1289,
    2014 WL 4057166 (W.D. Wash. Aug. 14, 2014)..................................................15

**STATE COURT DECISIONS**

*Reichenbach v. Chung Holdings, LLC*, 159 Ohio App. 3d 79 (2004) ................................9

**ADMINISTRATIVE DECISIONS**

*In re Dynasty Mortgage, L.L.C.*, 20 F.C.C. Rcd. 4921 (2005) .........................................21

*In the Matter of Dynasty Mortgage, L.L.C.*, 22 F.C.C. Rcd. 9453 (2007).......................12

**STATUTES, RULES, AND REGULATIONS:**

16 C.F.R. § 310.4 ......................................................................................................14

47 C.F.R. § 64.1200 ...........................................................................................*passim*

Fed. R. Civ. P. 8........................................................................................................7, 14

Fed. R. Civ. P. 56........................................................................................................6

Telephone Consumer Protection Act, 47 U.S.C. § 227.............................................. *passim*

**SECONDARY SOURCES:**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278
(3d ed. 2015). ........................................................................................................8

**<u>INTRODUCTION</u>**

Every month, Defendant Charter Communications, Inc.—one of the country's largest telecommunications providers—engages in a nationwide telemarketing campaign aimed at every person in its service area, except those who have already purchased every available Charter service. In January 2015, this resulted in Charter placing four phone calls to Plaintiff Michael Simmons, despite the fact that he has never subscribed, or sought to subscribe, to Charter's services; that his telephone number was listed on the National Do-Not-Call Registry; and that after the first call, he requested that Charter stop calling him. As a result, Plaintiff filed suit, alleging that Charter's calls to him—and thousands of putative class members—violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its do-not-call regulations, 47 C.F.R. §§ 64.1200(d) and (c), which prohibit, respectively, companies like Charter from placing telemarketing calls (i) at all, absent their implementation of certain do-not-call policies, and (ii) to individuals whose numbers are on the National Do-Not-Call Registry.

Charter now seeks summary judgment on three grounds. First, it claims that it was permitted to make telemarketing calls generally to Plaintiff Simmons because it falls within the safe harbor set forth in 47 C.F.R. § 64.1200(d), which required Charter to implement certain policies and procedures for maintaining its own do-not-call list. Second, it seeks to avoid liability for calling Plaintiff in violation of § 64.1200(c) while he was on the National Do-Not-Call Registry by invoking that regulation's safe harbor provision as well. And third, Charter seeks protection under the TCPA itself, asserting the statute's affirmative defense for companies that "establish and implement, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of" the do-not-call regulations. 47 U.S.C. § 227(c)(5).

There are two main flaws in each of Charter's asserted defenses. First, they have all been waived. Charter failed to assert its § 64.1200(d) safe harbor defense or its statutory affirmative defense in its Answer, (dkt. 28), thereby waiving each of them. Likewise, Charter has specifically disavowed any assertion that the calls to Plaintiff were the result of error, which is a threshold element of the safe harbor defense under § 64.1200(c)(2)(i). Second, even if Charter had properly raised its defenses, the undisputed facts fall far short of establishing Charter's implementation of the policies and procedures required to sustain them, and in fact merely demonstrate Charter's pervasive noncompliance.

Accordingly, the Court should deny Charter's motion for summary judgment, and allow Plaintiff to proceed with discovery on the remaining issues in the case.

## FACTUAL BACKGROUND

### *Charter's Identification of Telephone Numbers to Call*

Charter is one of the country's largest telecommunications companies. (*See* dkt. 28 at ¶ 1.) As part of its marketing efforts, Charter attempts to make telemarketing calls to *every* individual or household within its service area that either (a) does not currently subscribe to any available Charter service, or (b) does subscribe to a Charter service, but could still purchase additional services. (*See* Ex. D (Link Dep.) at 16:21–17:17.)[1]

Charter has two sources of telephone numbers for those households it seeks to call. First, for individuals who currently are or previously were Charter customers, Charter uses the telephone number associated with that individual's account (unless it knows that number to be inaccurate). (*See* Defendant's Local Rule 56(a)1 Statement of Undisputed Facts ("SUF"), dkt. 41 at ¶¶ 4, 4(A).) For individuals without a known, valid number, Charter uses a variety of vendors

---

[1] As used herein, all citations to exhibits refer to the exhibits attached to Plaintiff's Notice of Filing of Exhibits to His Local Rule 56(A)2 Statement, filed contemporaneously herewith.

to obtain suspected phone numbers for those individuals, (*id.*)*,* and in particular, the process known as "skip tracing." *See Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1040 (9th Cir. 2012) ("Skip-tracing is the process of developing new telephone, address, job or asset information on a customer, or verifying the accuracy of such information.").  While Charter recognizes that skip trace results are error-prone, once they are incorporated into its records, Charter does nothing to distinguish them from known, accurate numbers, or to alter its procedures in any way to account for the inherent uncertainty in the skip tracing process. (*See* SUF at ¶¶ 4(C), 5(A)–5(B); Plaintiff's Local Rule 56(a)2 Statement ("SUF Opp.") at ¶¶ 4(B), 5(B) (numbers accumulated through the skip tracing process are assigned a status that prevents them from being scrubbed).) Moreover, while Charter does require that the skip trace vendors have *some* level of confidence in the results obtained, it has been unable to specify what level of confidence was required—only that the confidence level was somewhere below 100% certainty. (SUF Opp. at ¶ 4(D).)

Once Charter has contact information for the individuals it plans on calling in a given month, it sends that information to another vendor, PossibleNOW. (*See* SUF at ¶ 5(A).) PossibleNOW then "scrubs" Charter's contact list to identify (a) telephone numbers on the Charter-specific do-not-call list maintained by PossibleNOW, (b) telephone numbers on the National Do-Not-Call Registry, and (c) numbers that Charter has associated with existing or current customer accounts, before returning a file to Charter with that information appended. (*See* SUF at ¶ 12(A).)

Based on the rules Charter has established for itself, (*see* SUF Opp. at ¶¶ 5(A), 13), Charter then calls any such number that is not flagged by PossibleNOW as being on the federal or Charter-specific do-not-call list. (*See* SUF at ¶¶ 5(A), 18.) However, if Charter believes that a

number is associated with an existing or recent customer (regardless of whether it is in fact associated), Charter will call that number even if it is on the National Do-Not-Call Registry. (*See* SUF at ¶¶ 5, 5(A), 5(B).)

**Charter's Outsourcing of its Calling Operations**

Once Charter has settled on a list of numbers to call during a given month, it then outsources the calling of those numbers to a variety of telemarketing companies, including, as with the calls to Plaintiff Simmons, a company called Empereon Marketing. (*See* SUF at ¶ 19.) Using the information provided by Charter, Empereon places calls *en masse*, and a given number will remain on Charter's list of numbers to be called until (a) there are no longer any services to sell to that individual, (b) the individual has made a do-not-call request and that request has been effectuated, or (c) if a significant enough number of calls have gone unanswered. (*See* Ex. D (Link Dep.) at 17:15–20, 32:10–14; SUF at ¶ 18.)

In addition to relying on companies like Empereon to place outbound telemarketing calls on its behalf, Charter also relies on those companies to process any do-not-call requests made. (*See* Ex. D (Link Dep.) at 52:16–53:8.) In other words, if Empereon places a call on Charter's behalf and the call recipient requests that the calls cease, the Empereon agent placing the call is supposed to take steps to have that individual added to the Charter internal do-not-call list. (*Id.*) If, however, after receiving or missing such a call, the individual calls Empereon back and requests not to receive any additional calls, Empereon's agents are supposed to add the individual to Empereon's internal do-not-call list, and to instruct the individual to call Charter's customer service number in order to be added to Charter's internal do-not-call list. (*See* Ex. D (Link Dep.) at 51:14–52:19.)[2]

_____

2

Charter itself has only minimal documentation regarding its do-not-call policies. It asserts that it outsources management of its internal do-not-call list to PossibleNOW; however, the only documentation it possesses regarding the do-not-call policies and procedures implemented on its behalf are contracts between the two companies for access to certain PossibleNOW services, not any policy or procedure that could be produced to an individual on demand. (*See* SUF at ¶¶ 6, 7(B).) Thus, if a customer misses a call, gets disconnected from a call, or simply calls Empereon back, and wants to make a do-not-call request, that person is then forced to call Charter customer service, and communicate the request to customer service agents with no written policy or procedure to guide them in processing the request. (*See id.*; Ex. D (Link Dep.) at 51:14–52:19.)

### *Charter's calls to Plaintiff Simmons*

Plaintiff Simmons has never been a Charter subscriber, nor has he requested services from Charter, or otherwise provided his telephone number to Charter prior to the initiation of this lawsuit. (*See* SUF Opp. at ¶¶ 2(D), 2(E).) Charter did have a customer relationship with a different individual, named ███████████, who was either a current or recent subscriber to Charter as of January 2015. (SUF at ¶ 1.)

Just prior to January 2015, Charter began the process of attempting to call ███████████ in order to sell her additional Charter services. (*See* SUF at ¶ 4(A); Ex. E (Shaar-Wildman Dep.) at 48:23–49:19.) Because Charter did not have a functioning phone number for ███████████, it used a skip trace provider, Relevate, to identify suspected contact numbers for her. (*See* SUF at ¶¶ 4(A)–4(B).) In response, Relevate identified a phone number to Charter as being associated with ███████████, despite that number in fact (a) belonging to Plaintiff Simmons as his cellular telephone number, and (b) having been registered on the National Do-Not-Call Registry

---

███████████████████ Charter has repeatedly stated that maintenance and updating of its do-not-call list is handled by PossibleNOW, not Empereon.

since 2010. (SUF at ¶¶ 4(C), 5(A); Ex. G (DNC Email).) Once provided with that number, Charter assumed it in fact belonged to ██████████, and treated it the same as if she had provided it herself. (*See* SUF Opp. at ¶¶ 4(C), 14, 25.)

When Charter sent the January 2015 call list to PossibleNOW to scrub, it identified Plaintiff Simmons's phone number as being associated with what it designates as a "migration" account (an account belonging to a customer of one of Charter's services, in this case ██████, to whom they would like to sell additional services). (SUF at ¶¶ 2(C), 2(E).) As a result of that "migration" status, Charter's calling rules dictated that Plaintiff Simmons's number be placed on the calling list, despite his number being on the National Do-Not-Call Registry. (SUF at ¶¶ 25, 25(A); SUF Opp. at ¶ 25(A).)

Pursuant to that instruction, on January 9, 2015, Empereon called Plaintiff Simmons on his cellular phone on Charter's behalf. (SUF at ¶ 27.) During that call, Simmons refused to consent to Charter's recording of the call, and the call was terminated after approximately 15 seconds. (*Id.* at ¶¶ 27–28.) Six minutes later, Simmons called Empereon back, demanding to know how his number had been obtained and why Empereon was attempting to record his call. (SUF at ¶¶ 29–31; SUF Ex. B.) After being informed that Empereon "may" record the call, Simmons again stated that he did not consent to being recorded, before stating, "Don't call me." (SUF Opp. at ¶ 31; Ex. F at 00:40–50.) After Simmons reiterated that he did not understand why he was being called and that he did not consent to being recorded, the Empereon agent terminated the call. (SUF at ¶ 31; SUF Opp. at ¶ 31.)

Six days later, Empereon again called Plaintiff Simmons on his cellular telephone on Charter's behalf. Simmons did not answer the call, and the call was terminated after going to voicemail. (SUF at ¶ 32.) Empereon called again on Charter's behalf four days after that with the

same result. (*Id.*) Finally, on January 24, 2015, four days after Empereon called Simmons yet again and he made a second do-not-call request, Simmons's number was finally added to Charter's internal do-not-call list maintained by PossibleNOW. (SUF at ¶¶ 34–36.)

**ARGUMENT**

"Summary judgment is appropriate when the record demonstrates that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gauba v. Travelers Rental Co., Inc.*, No. 12-cv-1713, 2015 WL 1004309, at *2 (D. Conn. Mar. 5, 2015) (Underhill, J.) (quoting Fed. R. Civ. P. 56(a)). "When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party." *Gauba*, 2015 WL 1004309, at *2 (collecting cases). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Here, Charter seeks summary judgment pursuant to three safe harbor provisions found in the TCPA and its implementing regulations. Each of those defenses fails. First, Charter cannot escape liability for its telemarketing calls *generally*, because it failed to plead the applicable defense in its Answer, and because it failed to implement the required policies and procedures in any event. Second, Charter cannot excuse its calls to Simmons and other individuals on the National Do-Not-Call Registry because it has expressly represented that its calls to Simmons were the result of error, as required by the § 64.1200(c) safe harbor. And third, Charter cannot shield itself behind the TCPA's statutory affirmative defense, because it also failed to plead that and again, hasn't made any reasonable effort to comply with the statute or its regulations.

Accordingly and as explained further below, Charter's summary judgment motion should be denied.

I.      **Charter's failure to plead the appropriate safe harbor defense and its failure to satisfy its requirements in any event mean that it was prohibited from making telemarketing calls to Simmons at all.**

47 C.F.R. § 64.1200(d) prohibits any entity from making telemarketing calls *unless* that entity "has instituted procedures for making a list of persons who request not to receive telemarketing calls made by or on behalf of that entity." *Id.* At a bare minimum, those procedures must include: (1) a written policy available upon demand, (2) training of telemarketing personnel, (3) recording and disclosure of do-not-call requests, (4) identification of sellers and telemarketers, (5) apply do-not-call requests to the appropriate entity, and (6) maintenance of do-not-call requests. *Id.* A company that places more than one telemarketing call to an individual within a 12-month period will be liable to that individual unless it can establish *each* of the six elements listed above. *See* 47 U.S.C. § 227(c)(5).

The Court need not even analyze Charter's supposed compliance with those provisions, however, because it failed to plead the safe harbor defense in its Answer. (*See* dkt. 28.) As such, Charter has waived the defense. *See* Fed. R. Civ. P. 8(c) (requiring defendant to "affirmatively state any avoidance or affirmative defense" in its answer); *see also Odyssey Reinsurance Co. v. Cal-Regent Ins. Servs. Corp.*, No. 14-cv-458, 2015 WL 4978684, at *10 (D. Conn. Aug. 20, 2015) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case.") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (3d ed. 2015)).

Even if that weren't the case (it is), the undisputed facts show that Charter fails to comply with the safe harbor provisions and was therefore prohibited from making the telemarketing calls at issue, regardless of Plaintiff's enrollment with the National Do-Not-Call Registry.

**A.  By its own admission, Charter lacks any "comprehensive written policy" for maintaining an internal do-not-call list.**

As to the first safe-harbor requirement (i.e., maintenance of written do-not-call policies, available on demand), Charter asserts that it has written contracts with PossibleNOW to manage its do-not-call list maintenance, and that it has a "second set of written policies for ensuring DNC compliance for calls made on Charter's behalf." (Mtn. at 10.) The problem with Charter's position is three-fold. First, Charter has not produced *any* of its own written do-not-call policies, despite the fact that its customer service department handles inbound calls relating to its telemarketing efforts, including do-not-call requests. (*See* Ex. E (Shaar-Wildman Dep.) at 102:15–22 (admitting that no comprehensive written procedures existed regarding Charter's telemarketing efforts); Ex. D (Link Dep.) 87:2–5 (likewise admitting that "no one document" captures Charter's do-not-call policies and procedures); *see also* Ex. H (Def.'s Resps. to Interrogatories) (failing to identify *any* documents to support its position that it has such written policies and procedures in place).) Second, while Charter contends that its contracts with Empereon and PossibleNow constitute written policies, it ignores the fact that those documents merely impose obligations *to have* do-not-call policies (*see* SUF Opp. at ¶¶ 6, 7(B))—they do not set forth what those policies and procedures actually are nor do they confirm compliance with those obligations. (*Id.*) And third, even if the contracts proffered by Charter did set forth specific policies and procedures, Charter has provided no evidence that those documents were available to call recipients on demand. *See* § 64.1200(d)(1) ("Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-

9

not-call list."); *see also Reichenbach v. Chung Holdings, LLC*, 159 Ohio App. 3d 79, 86 (2004)

(failure to have written do-not-call policy at time call was made constitutes violation); *Roylance*

*v. ALG Real Estate Servs., Inc.*, No. 14-cv-2445, 2015 WL 1522244, at *4 (N.D. Cal. Mar. 16,

2015) (finding violation of § 64.1200(d)(1) where defendants did not respond to letters

requesting copy of do-not-call policy). To the contrary, each has been marked CONFIDENTIAL

and filed under seal. (*See* SUF Opp. at ¶ 6; *see also* dkt. 38 at ¶ 8 (noting that the documents

marked CONFIDENTIAL "contain[] highly confidential and proprietary information … not

generally known to the public", and their "[d]isclosure would permit [Charter's] competitors to

obtain and capitalize on th[e] information" contained therein).)[3]

Charter also points to four pages of documents from its telemarketing vendor, Empereon

Marketing, setting forth ███████████████████████, arguing that those documents

satisfy the requirement that Charter "must have a written policy, available upon demand, for

maintaining a do-not-call list." § 64.1200(d)(1). Those documents, however, are insufficient to

meet Charter's burden for two reasons. First, ████████████████████████████████

████████████████████████████████████████████████████████████████

██ (SUF Ex. O at 1–4.) Charter has produced no documents showing how its own customer

service agents would process do-not-call requests and maintain a do-not-call list, despite the fact

that "Empereon cannot put them on Charter's list by request, they have to contact Charter

directly." (Ex. D (Link Dep.) at 52:12–15.) ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ ██████████████████████

which ██████████████████████████████████████



[3]      Moreover, the letter produced by PossibleNOW summarizing the services available to Charter did
not even exist until six months after Plaintiff Simmons received the calls at issue and, therefore, could not
have been "available on demand" at the time the calls were made to him. (*See* SUF Ex. E.)

████████████████████████████ and (ii) are marked CONFIDENTIAL, rather than being available to consumers upon request.

Without these written policies—as Charter's corporate representative admitted—Charter does not have the available-on-demand, comprehensive, written do-not-call policy required to satisfy § 64.1200(d)'s safe harbor provision. As such, summary judgment in its favor is inappropriate.

## B. Empereon did not properly record and effectuate Simmons's first do-not-call request.

Charter asserts that it satisfies the third safe harbor requirement under § 64.1200(d) (recording do-not-call requests) because "after Mr. Simmons told Charter that he did not wish to receive further calls, he never again received a call from Charter or Empereon on behalf of Charter." (Mtn. at 12.) Charter is mistaken. While it is true that on January 20, 2015, Simmons made a do-not-call request and subsequently stopped receiving calls, that was not his first request. Rather, shortly after receiving the first telemarketing call from Empereon (on Charter's behalf), Simmons called Empereon back, the Empereon agent answered and identified himself as representing Charter, and Simmons told the agent, "don't call me." (*See* Ex. F (Simmons Recording) at 00:40–00:50; SUF Opp. at ¶¶ 27, 29, 31.) Nonetheless, the Empereon agent did not log the result of the call—including Simmons's do-not-call request—in Empereon's records. (*See* SUF Ex. B.)

Charter disputes that Simmons made a do-not-call request in the January 9, 2015 phone call. Conveniently, it paraphrases the recording of that call to omit the portion containing the do-not-call request entirely (SUF at ¶ 31), and when given the opportunity to seek Simmons's clarification during his deposition, Charter chose not to. Likely for good reason, as the recording itself is clear: Simmons said "don't call me." (Ex. A (Simmons Decl.) at ¶ 4.) To the extent

Charter disagrees, that disagreement amongst the Parties would present a disputed issue of fact—an admittedly material fact, according to Charter (SUF at ¶ 31 (providing the conversation at issue as a material fact); *id.* at ¶ 35 (identifying another of Simmons's do-not-call requests as a material fact)—thus precluding summary judgment. *See Gauba*, 2015 WL 1004309, at *2 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Accordingly, to the extent Charter's safe harbor argument is premised on it having honored Simmons's do-not-call request, there is a disputed issue of material fact between the Parties as to when Simmons's first do-not-call request occurred and thus, summary judgment would be inappropriate.

*      *      *

Because Charter failed to comply with two of § 64.1200(d)'s six safe harbor requirements, its summary judgment motion fails in that regard.

## II. Because Charter does not claim that its calls to Simmons were in error, it cannot avail itself of the safe harbor for calling Simmons while his number was listed on the Do-Not-Call Registry.

Even if a company is permitted to make telemarketing calls *generally* under § 64.1200(d) (which Charter wasn't), it will still face liability for making telemarketing calls to a phone number listed on the National Do-Not-Call Registry, unless it can show compliance with the safe harbor provisions set forth in § 64.1200(c)(2)(i). Those provisions require the caller to establish that the call was "the result of error *and* that as part of its routine business practice," it (A) establishes *and implements* written do-not-call compliance procedures, (B) trains its personnel in do-not-call compliance procedures, (C) maintains and records a list of individuals it may not call as a result of them having made do-not-call requests, (D) accesses the national do-not-call database, and (E) establishes processes preventing misuse of its access to the national do-not-call

12

database. 47 C.F.R. § 64.1200(c)(2)(i) (emphasis added). Charter cannot avail itself of that defense for two reasons.

**First**, Charter has explicitly disavowed any claim that its calls were the result of error. "The safe harbor from liability for unlawful telemarketing calls" under § 64.1200(c)(2)(i) "only applies when a seller meets *each* of five separate operational criteria *and* also demonstrates that any unlawful calls were made as a result of identifiable error." *In the Matter of Dynasty Mortgage, L.L.C.*, 22 F.C.C. Rcd. 9453, 9461 (2007) (emphasis added). "An error claim should be supported by evidence showing that otherwise unlawful telephone solicitations were made unintentionally and detailing any procedural breakdowns that led to such calls, as well as the steps that the seller has taken to minimize future errors." *In re Dynasty Mortgage, L.L.C.*, 20 F.C.C. Rcd. 4921, 4929 (2005). Here, "however, [Charter] provides no information to satisfy a crucial element of the safe harbor: that the calls were made in error." *Id.* To the contrary, Charter has asserted in sworn interrogatory responses that the calls were decidedly *not* made as a result of error. (Ex. H (Rogg. Resp.) at No. 6 ("Charter states that it does not contend that calls to Plaintiff were made as a result of an error by Charter …"); *see also* Ex. I (Doc. Req. Resp.) at No. 14 ("Charter does not contend that calls to Plaintiff were the result of an error by Charter …").) "For this reason alone, [Charter's] safe harbor defense fails." *In re Dynasty Mortgage, L.L.C.*, 20 F.C.C. Rcd. at 4929.

**Second**, even if Charter had established error, it could not satisfy the other safe harbor requirements. To start, Charter cannot establish the existence of *any* of its own written do-not-call compliance procedures, as explained in Section I.A *supra*. *See* § 64.1200(c)(2)(i)(A) (requiring establishment and implementation of written procedures). Next, Charter's telemarketing practices essentially guarantee the widespread calling of numbers on the National

Do-Not-Call Registry. That is, when Charter lacks a functional telephone number for an individual it would like to call, it uses a skip trace vendor to obtain such a number. (*See* SUF at ¶ 4(A).) Although it recognizes that skip trace results are often inaccurate, (*see* SUF at ¶ 4(D); SUF Opp. at ¶ 4(D)), Charter regularly uses skip tracing to obtain telephone numbers to call anyway. (*See* SUF at ¶ 4(A).) Making matters worse, if Charter has skip traced a number and associated it with an existing or recent account, it simply assumes (without any investigation or confirmation whatsoever) that an existing business relationship exists between it and the owner of that number, and calls it even if the number is on the National Do-Not-Call Registry. (Ex. D. (Link Dep.) at 28:11–19.) And as Charter has made clear, that is not a mistake; it is a designed feature of its calling system. (*Id.* at 26:8–31:6.)[4] Thus, Charter has constructed a scrubbing strategy that knowingly resulted (in the case of Simmons) and will continue to result in (given the admitted inaccuracy of the skip trace process) the calling of individuals on the National Do-Not-Call Registry. Accordingly, Charter also fails to satisfy the third requirement of § 64.1200(c)(2)(i)'s safe-harbor provision.

Because Charter admits that its calls to Simmons were not the result of error, it has failed to establish the existence of its own written policies for do-not-call compliance, and it has implemented a wholly deficient do-not-call scrubbing process, it does not satisfy the requirements of § 64.1200(c)(2)(i)'s safe harbor. Thus, summary judgment should not be entered in Charter's favor.

---

[4] Given Charter's assertion that its calls were not the result of error, it must mean that its policies and procedures were deficient. After all, if the process functioned as intended and *still* resulted in the repeated calling of a telephone number registered with the National Do-Not-Call Registry, the process itself is lacking.

**III.** **Charter failed to plead the TCPA's statutory affirmative defense in its Answer, and cannot meet its requirements in any event.**

Finally, Charter cannot make up for its failure to satisfy the regulatory safe harbor provisions by clinging to the TCPA's statutory affirmative defense, which excuses liability if a caller can show that it "has established and implemented, with due care, *reasonable* practices and procedures to *effectively* prevent telephone solicitations in violation of the regulations" at issue. 47 U.S.C. § 227(c)(5) (emphasis added).

Foremost, Charter failed to plead this affirmative defense in its Answer. While it did assert five other defenses[5]—including that it did not use an autodialer to place the calls, that it meets § 64.1200(c)'s safe harbor provisions, that it meets the safe harbor provisions of 16 C.F.R. § 310.4(b),[6] that the applicable statute of limitations prohibits Plaintiff's claims, and that Plaintiff is not entitled to equitable relief—it did not even mention, much less assert, the statutory affirmative defense. (Dkt. 28 at 5–7.) Nor did it do so in its discovery responses. (*See* Exs. H, I.) Thus, to the extent § 227(c)(5) even could provide a standalone defense to Plaintiff's claims regarding the do-not-call regulations, it cannot apply here because Charter failed to timely assert it. *See* Fed. R. Civ. P. 8(c); *see also Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 526 (2d Cir. 2004) ("Generally, a failure to plead an affirmative defense results in a waiver.") *citing Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994); *Presti v. Dellacamera*, No. 08-cv-427, 2010 WL 466006, at *3 (D. Conn. Feb. 4, 2010)

---

[5] Charter's Answer also seeks to assert a sixth affirmative defense—purporting to reserve its right to assert any unnamed affirmative defenses pending discovery—yet Charter did not seek leave to amend its answer and affirmative defenses to include a § 227(c)(5) defense (to the extent it applies independently here), nor has it explained how information relating to its own policies and procedures could only "become available or apparent" during discovery. (*See* Dkt. 28 at 7.)

[6] Charter has not sought summary judgment based on the safe harbor provisions of 16 C.F.R. § 310.4(b), nor could it, as Plaintiff has not brought claims for violation of that regulation.

("[D]efendants are deemed to have waived an affirmative defense if they fail to raise it in the answer"); *Odyssey Reinsurance Co.*, 2015 WL 4978684, at *4 (collecting authorities).

Second, even if Charter had timely asserted the statutory affirmative defense, it still could not form the basis for summary judgment because Charter's policies and procedures were not "reasonable" to "effectively prevent telephone solicitations in violation of" the applicable regulations. 47 U.S.C. § 227(c)(5). To start, given Charter's assertion that its calls to Simmons were not the result of error, its policies and procedures were necessarily deficient and not "reasonable." That is, if Charter's policies and procedures, functioning correctly, still resulted in the placement of four calls to Simmons despite (a) his registration on the National Do-Not-Call Registry, and (b) his do-not-call request after the first call, Charter's policies and procedures cannot be considered reasonably effective. And again, Charter's do-not call policies and procedures are not "reasonable" inasmuch as it made *no* effort to maintain written, available-on-demand, policies for maintaining its own internal do-not-call list. (*See* Section I.A, *supra*.)

Finally, the statutory affirmative defense cannot form the basis for summary judgment in Charter's favor because the determination of whether Charter's policies and procedures were "reasonable to ensure compliance" requires resolution of several disputed issues of material fact. For one, while Charter claims that it has policies in place for managing its do-not-call lists, "some of the material it submitted is contradictory." *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, No. 13-cv-1289, 2014 WL 4057166, at *2 (W.D. Wash. Aug. 14, 2014). This includes (a) Charter claiming on the one hand that *it* determines the do-not-call guidelines used by PossibleNOW, and on the other that PossibleNOW makes that determination, (*see* SUF Opp. at ¶ 5.A); (b) whether Charter scrubs its lists itself, or PossibleNOW and Empereon do for Charter, (*see* SUF Opp. at ¶¶ 9, 12, 15, 22); (c) Charter claiming that it associated Plaintiff's

phone number with [redacted] account, and elsewhere claiming that Relevate did so, (*see* SUF Opp. at ¶¶ 4.B, 4.C); (d) Charter claiming that it only uses a number obtained by Relevate "if the vendor has a strong degree of confidence" in its accuracy, while its corporate representative testified that he did not know which confidence levels Relevate had and Charter requires, (*see* SUF Opp. at ¶ 4.D); and many more. Likewise, "there remain disputed issues of fact as to whether Defendant consistently" followed its own policies. *Southwell*, 2014 WL 4057166, at *2. In such circumstances, summary judgment is inappropriate. *Id.* (finding material issues of disputed fact where, *inter alia*, the defendant's do-not-call compliance evidence was self-contradictory, and where consistency of application was in questions).

**CONCLUSION**

Because Charter's do-not-call policies are at best disputed, and at worst inadequate as a matter of law, its summary judgment motion should be denied.

Respectfully submitted,

**MICHAEL SIMMONS**, individually and on behalf of all others similarly situated,

Dated: December 11, 2015

By: s/ J. Dominick Larry
One of Plaintiff's Attorneys

Benjamin H. Richman (phv07173)
brichman@edelson.com
J. Dominick Larry (phv07148)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Jonathan M. Shapiro (ct24075)
jshapiro@shapirolawofficesct.com

S<small>HAPIRO</small> L<small>AW</small> O<small>FFICES</small>, LLC
104 Court Street
Middletown, Connecticut 06457
Tel: 860.347.3325
Fax: 860.347.3874
*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 11, 2015, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

s/      J. Dominick Larry    
