**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MICHAEL SIMMONS, individually and on behalf of all others similarly situated, | Case No. 3:15-cv-00317-SRU |
| *Plaintiff*, | |
| *v.* | |
| CHARTER COMMUNICATIONS, INC., a Connecticut corporation, | |
| *Defendant*. | |

## PLAINTIFF'S LOCAL RULE 56(A)2 STATEMENT

Pursuant to Local Rule 56(a)2, Plaintiff Michael Simmons submits the following statement of facts in support of his Response in Opposition to Defendant's Motion for Summary Judgment.[1]

### *Charter Linked Mr. Simmons's Phone Number to Its Client's Account.*

1.     **STATEMENT NO. 1:** Charter has a customer whose "last name was also Simmons," and whose first name "was ███." Ex. A (Link Dep.) at 25:17-24.

**RESPONSE NO. 1:** Admitted.

2.     **STATEMENT NO. 2:** Charter attempted to contact ████████ for purposes of a "migration" campaign, in which Charter was contacting existing internet customers for purposes of marketing additional Charter services.

---

[1]     In this document and for the sake of clarity, each numbered paragraph is copied verbatim from Charter's Local Rule 56(a)1 Statement of Undisputed Facts, dkt. 41 (public version) and 43 (sealed version). Those paragraphs additionally copy Charter's own citations to various docket entries and exhibits attached to its Summary Judgment filing.

Following each numbered paragraph is Plaintiff's Local Rule 56(a)2 "**RESPONSE**," which responds to each preceding numbered paragraph and additionally cites to docket entries, and to the exhibits that are attached to the Plaintiff's Notice of Filing of exhibits to His Local Rule 56(A)2 Statement, filed contemporaneously herewith.

**RESPONSE NO. 2:** Plaintiff objects to the incorporation of Defendant's statement into the record. Its statement fails to comply with Local Rule 56(a)3's requirement that "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement … must be followed by a specific citation to … evidence that would be admissible at trial." L.R. 56(a)3; *see also*, *Beverly Hills Suites LLC v. Town of Windsor Locks*, No. 12-cv-00871, 2015 WL 5822590, at *10 (D. Conn. Sept. 30, 2015); *Tross v. Ritz Carlton Hotel Co., LLC*, 928 F. Supp. 2d 498, 503 (D. Conn. 2013). To the extent that Charter attempts to argue that its statement is merely a summation of the subsections that follow, Plaintiff objects to its introduction into evidence as being duplicative of those subsections that Defendant has appropriately included pursuant to L.R. 56(a)1. *See* Fed. R. Evid. 403 (providing for the exclusion of needlessly "cumulative evidence.").

A.    **STATEMENT NO. 2.A:** Charter's "outbound telemarketing campaigns run on a monthly basis." *Id*. at 20:19-20.

**RESPONSE NO. 2.A:** Admitted.

B.    **STATEMENT NO. 2.B:** Charter "create[s], on a monthly basis, lists that cover every customer -- current customer[s] that we would like to migrate to -- upsell to." *Id*. at 44:14-17; *see id*. at 20:20-21.

**RESPONSE NO. 2.B:** Admitted.

C.    **STATEMENT NO. 2.C:** Among other things, Empereon Marketing's ("Empereon") log of the calls to Mr.Simmons includes an indication "Mig Internet." Ex. B (CHTR_00002).

**RESPONSE NO. 2.C:** Admitted.

D.    **STATEMENT NO. 2.D:** "MIG is an abbreviation for 'migration,' which means that this is a current customer that has one of [Charter's] services that we are attempting

to sell multiple services to. Internet, it would appear that this person already had Internet." Ex. C (Shaar-Wildman Dep.) at 28:7-13.

**RESPONSE NO. 2.D:** Denied in part. Plaintiff admits that "MIG" is an abbreviation for "migration," and that such a designation means that Charter *believes* the individual associated with that account to be a current Charter customer to whom Charter wishes to sell multiple services. Denied to the extent that Defendant purports to state that the association of a name or phone number with a MIG designation means that such a relationship exists in fact. (*See* Ex. A (Simmons Decl.) at ¶ 3 (stating he never maintained a business relationship with Charter); Ex. B. (Simmons Dep.) at 30:11–14 (███████████████████████████ █████████████████████████).)

E.    **STATEMENT NO. 2.E:** When asked ████████████████████████ ███████████████████████████████████████████ Empereon Marketing testified ██████ When asked if ████████████████████████████ ███████, Empereon testified ██████████████████████████████████ ██████████ Ex. D (McRoberts Dep.) at 78:11-18.

**RESPONSE NO. 2.E:** Denied in part. Plaintiff admits that the agent who made the call in question would have ███████████████████████████████ █████████████████████████████████████████████, Plaintiff denies that any such █████████████████████████████████ in fact. (*See* Ex. A (Simmons Decl.) at ¶ 3 (stating that Mr. Simmons did not have any prior existing relationship with Charter at the time the calls in question were placed); Ex. B. (Simmons Dep.) at 30:11–14 ████████████████████████████████████████████████████ ██████ )

3. **STATEMENT NO. 3:** Charter sought to contact Ms. Simmons but did not have a functioning phone number for her.

**RESPONSE NO. 3**: Plaintiff objects to this statement on the basis of Defendant's failure to conform with the requirements imposed upon it by the Local Rules. *See* **RESPONSE NO. 2**. Notwithstanding Plaintiff's objection, admitted.

A. **STATEMENT NO. 3.A:** Charter testified that "this particular name ███ ███████ and address for whom we did not have a working number was a subscriber to Charter, but the phone number that we had on record was not working." Ex. A (Link Dep.) at 22:14-18.

**RESPONSE NO. 3.A:** Admitted.

4. **STATEMENT NO. 4:** Where, as here, Charter does not have a working phone number for a customer or potential customer, it employs vendors to try to identify the working phone number, and if the vendor has significant confidence in the match, that phone number is added to Charter's marketing database. That is how Mr. Simmons was associated with ███ ███████ account in Charter's database.

**RESPONSE NO. 4:** Plaintiff objects to Statement No. 4 for failure to comply with L.R. 56(a)1. *See* **RESPONSE NO. 2**. Plaintiff further objects to Defendant's statement for failing to comply with L.R. 56(a)1's requirement that "each material fact" be set forth "in separately numbered paragraphs," L.R. 56(a)1, by setting forth multiple statements of fact within a single paragraph.

A. **STATEMENT NO. 4.A:** Charter updates its phone records each month. Charter testified that its "outbound telemarketing campaigns run on a monthly basis. So we are pulling our lists on a monthly basis. One of the very first steps in that process to is to look at our database to see if there are addresses, people in our footprint, for whom we do not have a

working phone number. Each month we take all of those -- you know, either just the address or name and address, depending what we already have, and we send them to each of the vendors to find out if they can in fact find the number for us since we do not have a current working number in our database." Ex. A (Link Dep.) at 20:19-21:10.

**RESPONSE NO. 4.A:** Admitted.

B.    **STATEMENT NO. 4.B:** The vendor that associated Mr. Simmons's phone number with Ms. Simmons's Charter account is called Relevate. Charter further testified as follows: "Q. And so you would have made that sort of request or -- Charter would have made that request or order, from Relevate here, and they would have returned back what was the ███ number associated with some address within Charter's footprint? A. In this case." *Id*. at 21:11-22:17.

**RESPONSE NO. 4.B:** Denied in part. Plaintiff denies that Relevate "associated Mr. Simmons's phone number with Ms. Simmons's Charter account." Plaintiff admits that Charter received Mr. Simmons's telephone number from Relevate, but denies that Relevate, rather than Charter, was responsible for appending that number to a Charter account. (*See* Ex. D (Link Dep.) at 18:23–19:4 (denoting that Charter applies the phone numbers received from Relevate to its own database); *id*. at 27:12–23 (demonstrating that Relevate sends a database file to Charter who then automatically updates its marketing database by appending the telephone numbers received to its accounts); *see also* Statement No. 4.C (asserting that Mr. Simmons's phone number was automatically appended to Ms. Simmons's account *in Charter's marketing database*).)

C.    **STATEMENT NO. 4.C:** Once Mr. Simmons's phone number was associated with ███████, ███████ phone number for her account was updated with

Mr. Simmons's phone number. Charter further testified as follows: "Q. Does that automatically update within Charter's internal records? Does it automatically append the phone number to that address? A. It does to the marketing database. Just to the marketing database." *Id.* at 27:18-23.

**RESPONSE NO. 4.C:** Denied in part. Plaintiff denies the statement to the extent it is inconsistent with Statement No. 4.B, which asserts that Relevate, and not Charter, automatically associated Mr. Simmons's number with ███████ account.

D.    **STATEMENT NO. 4.D:** Charter only uses the process if the vendor has a strong degree of confidence that the phone number matches the account. Charter further testified: "Q. When you get that information back from Relevate, is there any sort of confidence level or score or flag or anything of that nature associated with it? A. Yes, there is. There are confidence intervals that vendors will perform their matching on, and we specify what confidence intervals we will only accept." *Id.* at 28:20-29:5.

**RESPONSE NO. 4.D:** Denied. Defendant has failed to denote the confidence level Relevate assigned to Mr. Simmons's telephone number or any other telephone number it received. (*See* Ex. D (Link Dep.) at at 30:13–17 (acknowledging Charter's failure to identify the specific confidence level associated with Mr. Simmons's telephone number).). Furthermore, the evidence cited by Defendant merely states that it specifies "confidence intervals" it will accept without providing any minimum requirements, metrics, or other basis in fact to determine what those "confidence intervals" are. (*See* Ex. D (Link Dep.) at 29:18–21 (Charter's appointed deponent testified that he couldn't "conclusively" state the confidence level Charter used for the telephone numbers received from Relevate); *id*. at 30: 9–12 (demonstrating that Charter does not know the total number of confidence levels utilized by Relevate).) As such, Defendant's "undisputed fact" is merely a subjective interpretation of its own unwritten policies.

5.  **STATEMENT NO. 5:** Because Mr. Simmons's phone number was associated with ████████████ account, it was treated as the phone number of someone with whom Charter has an existing business relationship for purposes of "scrubbing" against relevant Do Not Call lists.

**RESPONSE NO. 5:** Plaintiff objects to Statement No. 5 for failure to comply with L.R. 56(a)1. *See* **RESPONSE NO. 2**.

A.  **STATEMENT NO. 5.A:** Mr. Simmons's phone number "was, as all of [Charter's] phone numbers are, are regularly sent to PossibleNOW for scrubbing in the very beginning of our lift-generation process; PossibleNOW returned back the status of that number being on a federal do-not-call list but also the status that customer had an existing business relationship with Charter. So that designation, in the absence of them on Charter's private do-not-call, which they were not, allows us to dial that phone number." *Id*. at 37:11-25.

**RESPONSE NO. 5.A:** Plaintiff objects to the extent that Statement No. 5.A includes a legal conclusion regarding whether an existing business relationship (EBR) would in fact allow Charter to dial a given phone number. Subject to and without waiving that objection, Plaintiff denies the Statement in part. Plaintiff admits that Mr. Simmons's phone number was sent to PossibleNOW for scrubbing. However, Plaintiff denies that PossibleNow's designation of a telephone number as having an existing business relationship means that such a relationship exists in fact, or would allow Charter to dial that number. (*See* Ex. B. (Simmons Dep.) at 30:11–14 ████████████████████████████ ████████████); Ex. E to Defendant's Local Rule 56(a)1 Statement of Undisputed Fact ("SUF") (noting ████████████████████████████████ ████████████████████████████████████████

█████████████████████████████████████████████); *see also* Ex. D. (Link Dep. 66:17–67:17 (Charter's deponent admittedly does not know if it can or cannot modify the EBR policies utilized by PossibleNOW).)

        B.      **STATEMENT NO. 5.B:** Empereon testified as follows: ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Ex. D

(McRoberts Dep.) at 100:11-25.

        **RESPONSE NO. 5.B:** Denied in part. Plaintiff does not dispute that the McRoberts deposition contains the quoted language. Plaintiff likewise does not dispute that Mr. Simmons's telephone number was identified by Defendant as having an established relationship with Charter, and that was the reason that Charter ignored the fact that Mr. Simmons's telephone number was listed on the National Do-Not-Call Registry. However, Plaintiff denies that his phone number in fact related to an existing Charter customer, or that any business relationship existed between Plaintiff and Defendant. (*See* Ex. B. (Simmons Dep.) at 30:11–14 ████████

████████████████████████████████████████████████.)); Ex. D

(Link Dep.) at 25:17–20 (indicating the person who actually had a previous relationship with Charter was not Plaintiff, but a different individual with the name ████████).)

        ***Charter's Failure to Provide or Maintain DNC Policies and Procedures***

        6.      **STATEMENT NO. 6:** Charter's written policies for maintaining a DNC list are "written in a few different sources. Primarily, it's in our master services agreement and subsequent statements of work with PossibleNOW. It is also documented in the master services

agreements and subsequent statements of work for our telemarketing vendors." Ex. A (Link Dep.) at 86:2-8

**RESPONSE NO. 6:** Plaintiff objects to this Statement on the basis of the best evidence rule. That is, to the extent Charter seeks to prove that Charter has written policies for maintaining a DNC list, it should produce them in writing, rather than introducing a testimonial summation of documents. *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content …"); *See see also Hill Scott v. Dallas Cty. Hosp. Dist.*, No. 3:08-CV-600-O, 2010 WL 71038, at *3 (N.D. Tex. Jan. 7, 2010) (striking statements that sought to prove the contents of a document through testimony). Subject to and without waiving that objection, Plaintiff denies that Charter maintains any written policies or procedures for maintaining a DNC list as required by the TCPA. The contractual documents referred to in Statement No. 6 merely ███████  ████████████████████████████████████████ ████████████████████████████████████. *See* **RESPONSE NO. 7.B**. Furthermore, the documents referenced by Defendant in its Statement would not be available to consumers as required by the TCPA as each has been marked as CONFIDENTIAL and filed under seal. (*See* SUF Ex. L at 1–10 ██████████████████████████████████████████, the entirety of which was filed under seal and labeled CONFIDENTIAL for discovery); SUF Ex. F at 1–10 (█████████████████████████████ the entirety of which was filed under seal and labeled CONFIDENTIAL for discovery); SUF Ex. G at 1–5 ████████████████ ████████ the entirety of which was filed under seal and labeled CONFIDENTIAL for discovery); SUF Ex. H at 1–9 (████████████████████████████████ ████████████████████████████████ the entirety of which was filed under seal and labeled as CONFIDENTIAL for discovery); SUF Ex. I at 1–2 ██████████████████

██████████████████████████████████████████████████████████ the

entirety of which was filed under seal and labeled as CONFIDENTIAL for discovery); SUF Ex.

J at 1–10 (████████████████████████████████████████████ the

entirety of which was filed under seal and labeled as CONFIDENTIAL for discovery).)

7.      **STATEMENT NO. 7:** Charter uses PossibleNOW's services for "scrubbing"
phone numbers against all relevant Do Not Call lists.

**RESPONSE NO. 7:** Plaintiff objects to Statement No. 7 for failure to comply
with L.R. 56(a)1. *See* **RESPONSE NO. 2**.

A.      **STATEMENT NO. 7.A:** Charter "use[s] PossibleNOW as [Charter's]
purveyor of [DNC lists], since they are also the FCC's vendor for the federal do-not-call list, so
we trust that they have the best, most up-to-date knowledge of every state, because they do
support the FCC, as well." *Id*. at 40:15-21; *id*. at 77:6-13 ("I can say we use them because they
maintain the federal do -- the do-not-call list for the FCC. So it was our determination that they
would be the best place to go because they're the FCC's vendor for that list. So we assumed that
must be the gold standard.").

**RESPONSE NO. 7.A:** Plaintiff objects to Statement No. 7.A as including
irrelevant and immaterial facts. The reasoning behind Charter's choice of PossibleNOW as its
service provider is wholly irrelevant and immaterial to any of Plaintiff's underlying claims or
Charter's defenses. *See* Fed. R. Evid. 401; Fed. R. Evid. 402 ("Irrelevant evidence is not
admissible."); L.R. 56(a)3 (requiring citations in support of a Local Rule 56(a)1 statement to
consist of "evidence that would be admissible at trial."). Subject to and without waiving that
objection, Plaintiff admits that Charter uses PossibleNOW as its purveyor of DNC lists.

B. **STATEMENT NO. 7.B:** PossibleNOW provides a variety of services to Charter to ensure compliance with the TCPA. *See* Ex. E (CHTR_00018) (describing services that ensure compliance with DNC rules, existing business relationship exceptions, and restrictions on calling wireless telephone numbers); Ex. F (CHTR_00019-28); Ex. G (CHTR_00029-33) (Attachment A—Services Provided and Attachment B—Customer Order Form); Ex. H (CHTR_00036-44) (additional PossibleNOW agreement for services); Ex. I (CHTR_00045-46) (Services Schedule #1 to Master Services Agreement); Ex. J (CHTR_00047-56) (PossibleNOW End User Agreement); Ex. K (PossibleNOW_Charter 0036) (sample Change Order for PossibleNOW services).

**RESPONSE NO. 7.B:** Denied in part. Plaintiff admits that PossibleNOW provides a number of services to Charter. However, Plaintiff denies that the services PossibleNOW provided to Charter in fact "ensure[d] compliance with the TCPA." Plaintiff further denies that the documents cited support the proposition asserted. For instance, the first initial document referenced by Charter (SUF Ex. E), does not "ensure compliance" with any DNC rules. Rather, it acts as a summary of the services that Charter has contracted to receive, and has the "option" to utilize. (*See id*.; *see also* Ex. E. (Shaar-Wildman Dep.) at 103:8–11; *id*. at 107:5–7 ("These are services that -- at our disposal. Some we use or some we may not use[.]").) Likewise, none of the documents cited by Charter in fact "ensures" do-not-call compliance, as opposed to merely being a contract for services. (*See* SUF Ex. F at 1–10 (███████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████); SUF Ex. G at 1–5 ████); SUF Ex. H at 1–9 (████); SUF Ex. K at 1 (████); SUF Ex. J at 1, 2 (██████████████████████████████ ████

████████████████████████████████████████████

████████████ ); *id*. at 4 (███████████████████

████████████████████ ).)[2]

8.    **STATEMENT NO. 8:** Under its policies, Charter needs to "scrub against the National Do-Not-Call List, the state do-not-call. We certainly need to understand which numbers are wireless." Ex. C (Shaar-Wildman Dep.) at 72:10-16.

**RESPONSE NO. 8:** Plaintiff objects to this Statement on the basis of the best evidence rule. That is, to the extent Charter seeks to prove that Charter has written policies for maintaining a DNC list, it should produce them in writing, rather than introducing a testimonial summation of documents. *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content …"); *see also Hill Scott*, 2010 WL 71038, at *3 (striking statements that sought to prove the contents of a document through testimony).. Subject to and without waiving that objection, Plaintiff denies that Charter has any written policies or procedures governing its own conduct to comply with the TCPA and applicable do-not-call regulations. *See* **RESPONSE NO. 6**. Charter's reliance upon deposition testimony to express the content of its "policies" demonstrates its failure to maintain its policies, if any, in the necessary written format.

9.    **STATEMENT NO. 9:** Before sending phone numbers to its outbound telemarketing vendors, Charter "scrubs" phone numbers itself "using the [PossibleNOW] do-not-call solution and [various] addons." Ex. A (Link Dep.) at 73:13-19; *see also id*. at 37:13-21; *id*. at

---

[2]    Additionally, Charter's citations to the contractual documents should be stricken because they cite entire documents, without any guidance as to the specific pages supporting its contentions. *See* L.R. 56(a)3 (requiring counsel to "cite to specific pages when citing to … documents longer than a single page in length."). Here, Charter has submitted five separate documents and cited them in their entirety, without establishing which pages support its contentions.

84:5-15. PossibleNOW "performs the scrub for Charter" against the federal and state DNC registries. *Id.* at 73:3-12.

**RESPONSE NO. 9:** Denied. Charter's statement is disputed within its own four corners. The statement declares first that "Charter 'scrubs' phone numbers itself" only to immediately claim that "PossibleNOW 'performs the scrub for Charter.'" Moreover, Charter's deposition testimony indicates that Charter fails to perform any type of "scrub" on its own behalf, instead relying entirely upon third-parties to perform any scrub and prevent any calls to a DNC list or registry subscriber. (*See* Ex. D (Link Dep.) at 73:3–11 (discussing PossibleNOW performing Charter's scrubs); Ex. E (Shaar-Wildman Dep.) at 114:15–22 (Admitting that "[t]here's nothing Charter would have done internally to assess whether [a number is] on the National Do-Not-Call Registry because" those "[s]crubs are done by PossibleN[.]").)

10. **STATEMENT NO. 10:** Among other things, PossibleNOW uses "all commercially reasonable, professional and customary methods to ensure that it obtains the correct and updated DO NOT CALL DATA from various applicable entities." Ex. F (CHTR_00019-28) at CHTR_00022.

**RESPONSE NO. 10:** Denied. Charter's supposed evidence supporting Statement No. 10 is merely a contract where PossibleNOW ███████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████ (SUF Ex. F at 4 (emphasis added).) Charter does not identify any evidence establishing how PossibleNOW performed that contractual obligation in practice.

11. **STATEMENT NO. 11:** Part of Charter's agreements for PossibleNOW's services ████████████████████████████████████████████ ████████████████████████ Ex. I (CHTR_00045-46) at CHTR_00045.

**RESPONSE NO. 11:** Denied. The contract cited by Charter merely requires Charter to ████████████████████████████████████████████ ████████████████████████████████████████████ (SUF Ex. I, at 1 (emphasis added).) The contract itself even acknowledges that Charter may not in fact purchase such access. (*See id.* ████████████████████████████████ ████████████████████████████████████████████ ███████████.)

12. **STATEMENT NO. 12:** Charter "regularly use[s] each of these services that it's signed up for with PossibleNOW." Ex. A (Link Dep.) at 62:25-65:4; *see also id.* at 63:14-15 (explaining that "[PossibleNOW] services are used on a regular monthly basis").

**RESPONSE NO. 12:** Denied. Plaintiff denies that Charter "regularly use[s] each of [the enumerated] services that it's signed up for with PossibleNOW." The Link testimony, relied upon by Charter in making this assertion, contradicts its claim that it "regularly" uses "each" service. (*See* Ex. D. (Link Dep.) at 67:18–68:22 (indicating that Charter never used one of the enumerated services throughout Mr. Link's tenure with the company); *id.* at 63:14–17 (identifying only three of the services that are actually utilized on a regular basis).)

A. **STATEMENT NO. 12.A:** Charter "send[s] th[e] universe of calling phone numbers into PossibleNOW and ask[s] for PossibleNOW to do all the rules -- apply the rules and scrubbing around state, local, federal -- and we also ask PossibleNOW to distinguish wireless and land lines. So that comes back to us based on what PossibleNOW returns. So they

tell us who is restricted from being called. They make that clear to us. We then remove those customers from our lists and send the lists out to the vendors." *Id*. at 84:9-22; *see also id*. at 74:12-17 ("Q. So the file received from client here, as far as Empereon is concerned, that's a scrubbed file? A. This is our list that has been through all the scrubbing we've discussed to date - - so far.").

    **RESPONSE NO. 12.A:** Denied in part. Plaintiff admits that Charter sends a list of numbers it desires to call to PossibleNOW, and asks for PossibleNOW to scrub the list and distinguish wireless and land lines. Plaintiff denies that Charter then removes customers who are restricted from being called from its lists and sends those lists to vendors. (*See* SUF Ex. E

█████████████████████████████████████████████████████); *see also* Ex. D

(Link Dep.) at 71:23–72:8 (acknowledging that PossibleNOW identified Mr. Simmons as both being a member of the National Do-Not-Call List and as having an EBR with Charter); *id*. at 46:17–47:3 (acknowledging that PossibleNOW assigned both National Do-Not-Call list membership and EBR status to Mr. Simmons's telephone number); *id*. at 73:3–6 (Q: "[T]he scrub is performed by PossibleNOW, right?" A: "The scrub performed by Charter is performed by PossibleNOW.").)

  13.  **STATEMENT NO. 13:** PossibleNOW also "gets the customer information from Charter that allows it to determine whether the person fits the criteria for an existing-business-relationship designation." *Id*. at 65:21-66:5.

    **RESPONSE NO. 13:** Denied. Plaintiff admits that Charter provides PossibleNOW with information for the purpose of establishing whether a telephone number should be labeled as having an existing business relationship with Charter. However, Plaintiff denies that the information is either sufficient for PossibleNOW to make such a determination, or that any

15

determination made by PossibleNOW regarding a prior business relationship is correct. (*See* Ex. B (Simmons Dep.) at 30:11–14 (█████████████████████████████████████████ █████████████████████).)

      14.    **STATEMENT NO. 14:** Where a phone number "c[omes] back with an EBR [existing business relationship] status," it "tells us that it was eligible to be called under the EBR rules of the state in which the customer existed." *Id*. at 41:2-6.

      **RESPONSE NO. 14:** Denied. Plaintiff denies Defendant's statement insofar as it seeks to establish that the return of a number with an attached EBR status actually demonstrates it was in fact eligible to be called under the applicable rules of the state in which the customer resides. (*See* Ex. D (Link Dep.) at 45:23–46:4 (admitting that PossibleNOW flagged Mr. Simmons's telephone number as "having an existing business relationship"); *id*. at 46:17–47:3 (discussing PossibleNow's flagging of Simmons's telephone number as both on the National Do-Not-Call List and an EBR); *id*. at 32:10–14 (admitting that Charter will dial numbers "until such a time that we determine that it's not a functioning phone number[ or] could be a wrong number …."); *see also* Ex. B. (Simmons Dep.) at 30:11–14 ██████████████████████ ████████████████████████████████████████)

      15.    **STATEMENT NO. 15:** "[I]t was through these [different] solutions [offered by PossibleNOW] that Charter -- or that PossibleNOW, A, identified or flagged the number as being on the do-not-call registry, and B, flagged this as an existing relationship, EBR, number . . . ." *Id*. at 71:21-72:8.

      **RESPONSE NO. 15:** Denied to the extent the statement refers to Charter itself, rather than PossibleNOW. (*See* Ex. D (Link Dep.) at 72:18–73:11 (acknowledging that PossibleNOW performs the scrub against national and state do not call lists for Charter); *id*. at

45:23–46:4 (admitting that PossibleNOW flagged Mr. Simmons's telephone number as "having an existing business relationship").)

16. **STATEMENT NO. 16:** "Charter also has their own do-not-call list." Ex. C (Shaar-Wildman Dep.) at 72:10-16.

**RESPONSE NO. 16:** Denied. Plaintiff denies that Charter, rather than PossibleNOW, possesses or maintains its own internal do-not-call list. (*See* Ex. E (Shaar Wildman Dep.) at 87:12–16 (Q: "Client internal DNC, is that referring to a do-not-call list maintained by Charter?" A: "It is a Charter internal DNC maintained by PossibleNOW."); Ex. C (McRoberts Dep.) at 92:12–19 ███████████████████████████████████

███████████████████████████████.)

17. **STATEMENT NO. 17:** "The Charter internal do-not-call list can be updated from a variety of sources, one being customers calling into one of our customer-care centers and requesting that they be placed on our do-not-call list. A second possibility is if in fact, instead of calling the -- in lieu of calling our customer-care center, a customer could also write a letter requesting they be put on the do-not-call list. Again, it is flagged in the billing system. Another possibility is when we do our outbound telemarketing and we reach a customer and they say, as you know in the call logs here, Don't call me anymore. So we learn that by speaking to customer[s]. That is captured and retained by us and kept in our systems. So there's multiple sources for Charter's privacy list -- internal do-not-call list." *See* Ex. A (Link Dep.) at 48:3-24.

**RESPONSE NO. 17:** Denied in part. Plaintiff does not dispute that there may be multiple methods of updating any internal list that Charter maintains and advances as a "do-not-call list." However, Plaintiff denies that such requests are recorded or that the list is updated every time such requests are made. (*See* Ex. F (Simmons's Call Recording) at 00:45–00:50

(featuring a do-not-call request placed by Mr. Simmons which was neither recorded nor honored by either Charter or Empereon); SUF Ex. B (showing no record of Mr. Simmons's January 9th 2015 do-not-call request); Ex. D (Link Dep.) at 58:9–59:11 (demonstrating that Charter's 30(b)6 deponent is "not aware of the policies that exist" for handling in-bound DNC requests made directly to Charter, instead believing there to be a "presumption of a policy."); Ex. E (Shaar-Wildman Dep.) at 104:22–105:12 (demonstrating that any IDNC request made directly to a Charter customer care representative does not update the internal DNC; rather the request must be made and then a series of emails must occur before any such request is recorded or honored).)

18.     **STATEMENT NO. 18:** ███████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████ Ex. D (McRoberts Dep.) at 69:3-9; *see also* Ex. A (Link Dep.) at 38:15-19 ("Q. Now, just looking at how those parts relate to each other, if that number had been on the internal do-not-call list, would it have been called? A. No, sir.")

**RESPONSE NO. 18:** Denied in part. Plaintiff denies that Charter possesses its own internal do-not-call list as required by the TCPA. No documentation has been produced to establish the existence of such a list, nor has the appropriate evidence been produced to establish whether any such list conforms to the requirements of the TCPA. (*Cf.* Ex. E (Shaar-Wildman Dep.) at 87:12–16 (Q: "Client internal DNC, is that referring to a do-not-call list maintained by Charter?" A: "It is a Charter internal DNC maintained by PossibleNOW."); Ex. C (McRoberts Dep.) at 92:12–19 ██████████████████████████████████████

██████████████████████████████.)

*Charter's Reliance Upon Third-Parties to Perform its Statutorily Imposed Duties*

19.     **STATEMENT NO. 19:** Charter sent Mr. Simmons's phone number to its vendor,

Empereon Marketing for calling. Ex. A (Link Dep.) at 34:4-10.

>       **RESPONSE NO. 19:** Admitted.

20.     **STATEMENT NO. 20:** The Master Services Agreement between Charter and

Empereon requires the following:



*See* Ex. L (CHTR_00003-12) (Master Outbound Telemarketing Agreement) at CHTR_00008.

>       **RESPONSE NO. 20:** Plaintiff objects to the introduction of Defendant's

statement for being a legal conclusion as to what the contract between Charter and Empereon

requires from either party. *See Brown v. Tuttle*, No. 3:13-cv-1444, 2015 WL 3886466, at *2 (D.

Conn. June 24, 2015) (noting that a motion for summary judgment "must be denied" for failing

"to comply with the Court's rules" by submitting a L.R. 56(a)1 Statement that contained legal conclusions and legal arguments). Subject to and without waiving that objection, Plaintiff denies the Statement in part. Plaintiff does not dispute that the cited material includes the quoted language. However, Plaintiff denies the statement insofar as it attempts to establish that the duties imposed by the contract were fulfilled by either party as a matter of fact. This is best evidenced by Mr. Simmons's particular experience in receiving violative calls on Charter's behalf, contrary to the duties imposed by the quoted contract provision. (*See* Ex. F (Simmons Recording) at 00:40–00:50 (demanding the calls in question cease); Ex. A (Simmons Decl.) at ¶ 4 (reaffirming that Mr. Simmons demanded the calls cease during his January 9, 2015 telephone call); SUF Ex. B (identifying three additional telephone calls that occurred after Mr. Simmons made his initial demand that the calls cease, as well as a failure to record the initial January 9, 2015 do-not-call request ).) Additionally, Charter's appointed deponent testified that do-not-call requests made during inbound calls to Empereon are not applied to any list maintained by Charter. (*See* Ex. D (Link Dep.) at 51:14–52:19.)

21.    **STATEMENT NO. 21:** The requirements in the Master Outbound Telemarketing Agreement also include:





*See id.* at CHTR 00008-09.

**RESPONSE NO. 21:** Plaintiff objects to the introduction of Defendant's statement for being a legal conclusion as to what the contract between Charter and Empereon requires from either party. *See Brown v. Tuttle*, No. 3:13-cv-1444, 2015 WL 3886466, at *2 (D. Conn. June 24, 2015) (noting that a motion for summary judgment "must be denied" for failing "to comply with the Court's rules" by submitting a L.R. 56(a)1 Statement that contained legal conclusions and legal arguments). Subject to and without waiving that objection, Plaintiff denies the Statement in part. Plaintiff does not dispute that the cited material includes the quoted language. However, Plaintiff denies the statement insofar as it attempts to establish that the duties imposed by the contract were fulfilled by either party as a matter of fact. *See also* **RESPONSE NO. 20**.

22. **STATEMENT NO. 22:** "[O]n top of [Charter's scrubs using PossibleNOW] . . , four steps later, Empereon crosscheck[s]" numbers before calling them. Ex. A (Link Dep.) at 73:13-74:2. "They repeat the same scrubs that [Charter] performed previous to their receiving the file." *Id.*; *see also* Ex. D (McRoberts Dep.) at 71:25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮); Ex. D (McRoberts Dep.) at 104:23-105:4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



).

**RESPONSE NO. 22:** Denied. Plaintiff denies Charter's statements that it performed the scrubs in question. Defendant's statement is a blatant mischaracterization of the Link deposition. The deposition clearly states that the scrubs are performed by PossibleNOW, not Charter. (*See* Ex. D (Link Dep.) at 73:5–12).) Furthermore, Plaintiff denies that Empereon ██████████████████████████████████████████████ The McRoberts deposition clearly states ███████████████████████. (*See* Ex. C (McRoberts Dep.) at 71:16–25 ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████); *id.* at 104:25–105:4 ████████████████████

████████████████████████████████████████████ (emphasis added).)

23.    **STATEMENT NO. 23:** Empereon telemarketers ████████████████████

████████████████████████ Ex. D (McRoberts Dep.) at 94:10-15.

**RESPONSE NO. 23:** Admitted.

24.    **STATEMENT NO. 24:** ████████████████████████████████████

████████████████████████████ *Id.* at 94:21-95:2; *see also* Ex. M

(Simmons Empercon 0001- 59) at Simmons Empereon 0038; Ex. N (CHTR_00017) (███

███████████████████████████); Ex. O (CHTR_00013-16)

████████████████████████████.

**RESPONSE NO. 24:** Admitted.

***Charter's Violative Calls***

25.    **STATEMENT NO. 25:** Because Mr. Simmons's phone number was believed to be the phone number for existing client █████████, it was scrubbed using the "existing business relationship" rules.

**RESPONSE NO. 25:** Plaintiff objects to the introduction of Charter's statement as it has again failed to satisfy the requirements of the Local Rules in presenting its statement. *See* **RESPONSE NO.** 2. As such, this statement should be excluded in its entirety.

A.    **STATEMENT NO. 25.A:** "PossibleNOW returned back the status of [Mr. Simmons's] number being on a federal do-not-call list but also the status that customer had an existing business relationship with Charter. So that designation, in the absence of them on Charter's private do-not-call, which they were not, allows us to dial that phone number." Ex. A (Link Dep.) at 37:17-25.

**RESPONSE NO. 25.A:** Denied in part. Plaintiff does not dispute that Mr. Simmons's telephone number was assigned the status of having an established business relationship with Charter. However, Plaintiff denies that any such relationship ever actually existed. (*See* Ex. B. (Simmons Dep.) at 30:11–14 █████████████████████
████████████████████████████████.) Furthermore, Plaintiff denies that simply being designated as having an established business relationship with Charter "allow[ed] [Charter] to dial that phone number." Such a conclusion is a legal determination, not one of fact. *See Brown*, 2015 WL 3886466, at *2.

B.    **STATEMENT NO. 25.B:** *See also* Ex. D (McRoberts Dep.) at 100:11-19

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████). 

**RESPONSE NO. 25.B:** Denied in part. Plaintiff does not dispute that his

account was labeled as a migration record based on an assumed established business relationship.

However, Plaintiff denies that his account was an actual migration account, and denies that he

ever had an established business relationship with Charter. (*See* Ex. B. (Simmons Dep.) at

30:11–14 (██████████████████████████████████████████████████

███████.)

26.     **STATEMENT NO. 26:** Mr. Simmons received four telephone calls on behalf of

Charter and placed one call to Charter in January 2015. Ex. B (CHTR_00002) (Simmons Call

Log).

**RESPONSE NO. 26:** Admitted.

27.     **STATEMENT NO. 27:** The first call, on January 9, 2015, lasted approximately

15 seconds. *Id.*

**RESPONSE NO. 27:** Admitted.

28.     **STATEMENT NO. 28:** The content of the call was as follows:

Simmons:            Hello?

Representative:      Hello, hi my name is Rich McQueen, and I'm a products specialist
                     with Charter Communications. And I just want to inform you that this call
                     will be monitored and/or recorded for quality purposes.

Simmons:            Oh fuck no. You're not going to record me.

Representative:      I'm sorry, what'd you say, sir?
[Call terminates.]

Simmons Empereon 000064 (produced audio recording).

**RESPONSE NO. 28:** Admitted.

29.	**STATEMENT NO. 29:** The second call was initiated by Mr. Simmons to Charter (and answered by an Empereon employee) the same day. Ex. B (CHTR_00002) (Simmons Call Log).

      **RESPONSE NO. 29:** Admitted.

30.	**STATEMENT NO. 30:** That call lasted approximately one minute. *Id.*

      **RESPONSE NO. 30:** Admitted.

31.	**STATEMENT NO. 31:** On that call, the following exchange occurred:

Recording:	Thank you for calling Charter Communications. We were contacting you to tell you about how you can benefit from . . . [recording terminates.]

Representative:	Thank you for holding. This is Ian Davis at Charter Communications. How may I help you?

Simmons:	Yeah, I wanna know how you got my phone number and why you are calling me telling me you are going to record me.

Representative:	Um well I just want to real fast before we continue I just want to let you know that this call may be monitored or recorded for quality . . . [mumbling]

Simmons:	I do not consent to being recorded, that's my issue.

Representative:	Well unfortunately, sir...

Simmons:	I do not consent. I do not consent to being recorded. Do you understand that?

Representative:	Yes, sir, but, unfortunately, I cannot make it not on a recorded line . . .

Simmons:	Ok well its illegal then to record me. If I don't consent to it, it's against federal law.

Representative:	Ok well so … [mumbling]

Simmons:	I don't understand why you people are calling me, I don't have a public phone number, I don't have Charter Communications, I don't want to be recorded.

| | |
|---|---|
| Representative: | Ok well sir, I am going to have to ultimately terminate this conversation if it can't be recorded. I thank you for your time. If you have any questions, contact someone in HR. |
| Simmons: | You guys are a bunch of assholes. |

Simmons Empereon 000065 (produced audio recording).

**RESPONSE NO. 31:** Denied in part. Plaintiff denies the accuracy of the transcription of his phone call to Charter. At approximately 00:47 of the relevant recording, Mr. Simmons requests that the calls cease, demanding "don't call me." Defendant omits this statement entirely from its transcription. (*See* Ex. F (Simmons Recording) at 00:40–00:50; *see also* Ex. A (Simmons Decl.) at ¶ 4 (acknowledging Mr. Simmons's statement during the conversation with the Empereon agent was "don't call me.").) Plaintiff contends the relevant portion of the recording occurred as follows:

(Beginning at the 00:41 mark)

| | |
|---|---|
| Simmons: | Ok well its illegal then to record me. If I don't consent to it, it's against federal law. |
| Representative: | Ok, well so. |
| Simmons: | Don't call me. I don't understand why you people are calling me, I don't have a public phone number, I don't have Charter Communications, I don't want to be recorded. |

Ex. F (Simmons Recording).

32.    **STATEMENT NO. 32:** The third and fourth calls were on January 15 and 19, and both resulted in an answering machine picking up the calls. Ex. B (CHTR_00002) (Simmons Call Log).

**RESPONSE NO. 32:** Admitted.

33.    **STATEMENT NO. 33:** Charter did not leave a message for Mr. Simmons. *Id.*

**RESPONSE NO. 33:** Admitted.

34.    **STATEMENT NO. 34:** Mr. Simmons answered the fifth call, on January 20, 2015. *Id.*

   **RESPONSE NO. 34:** Admitted.

35.    **STATEMENT NO. 35:** During this call, Mr. Simmons indicated that he did not want to receive any more phone calls from Charter. *Id.*

   **RESPONSE NO. 35:** Admitted.

36.    **STATEMENT NO. 36:** Mr. Simmons's number "went on the Charter internal do-not-call list . . . [on] January 24th, 2015." Ex. C (Shaar-Wildman Dep.) at 111:23-112:3.

   **RESPONSE NO. 36:** Admitted.

37.    **STATEMENT NO. 37:** Mr. Simmons testified: █████████████████████
███████████████████████ Ex. P (Simmons Dep.) at 77:19-78:2.

   **RESPONSE NO. 37:** Admitted.

38.    **STATEMENT NO. 38:** Mr. Simmons testified: █████████████
████████████████████████████████████████████████████████ *Id.* at 90:5-15.

   **RESPONSE NO. 38:** Admitted.

39.    **STATEMENT NO. 39:** He also testified as follows: ███████████████
████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████  *Id.* at 86:3-18.

**RESPONSE NO. 39:** Admitted.

**DISPUTED ISSUES OF MATERIAL FACT**

**ISSUE 1:** Whether Mr. Simmons's telephone number was associated with ████

████ Charter account by Charter itself, or by Relevate. *See* **RESPONSE NO. 4.B.**

**ISSUE 2:** Whether Charter requires a strong degree of confidence that the phone numbers produced by its skip-tracing vendors matches its accounts. *See* **RESPONSE NO. 4.D.**

**ISSUE 3:** Whether Charter determines the do-not-call guidelines used by PossibleNOW to "scrub" the telephone number lists provided by Charter, including the guidelines to determine the existence of an existing business relationship. *See* **RESPONSE NO. 5.A.**

**ISSUE 4:** Whether Simmons's telephone number was in fact related to an existing or previous customer of Charter's. *See* **RESPONSE NOS. 2.D, 2.E, 25.A, 25.B.**

**ISSUE 5:** Whether any previously existing business relationship existed between Mr. Simmons and Charter. *See* **RESPONSE NOS. 2.D, 2.E, 25.A, 25.B.**

**ISSUE 6:** Whether Charter maintains written policies for complying with the do-not-call regulations imposed by the TCPA. *See* **RESPONSE NOS. 6, 7.B.**

**ISSUE 7:** Whether Charter implements any written policies that it maintains for complying with the do-not-call regulations imposed by the TCPA. *See* **RESPONSE NOS. 6, 7.A, 7.B, 8, 9, 10, 11.**

**ISSUE 8:** Whether Charter maintains written policies for complying with the do-not call regulations imposed by the TCPA that can be produced and delivered to a consumer on demand. *See* **RESPONSE NOS. 6, 7.B.**

**ISSUE 9:** Whether Charter utilizes all of the services contracted for through PossibleNOW. *See* **RESPONSE NOS. 7.B, 12.**

**ISSUE 10:** The manner in which any and all of contracts referenced in Defendant's briefing were performed, if performed at all. *See* **RESPONSE NOS. 10, 20, 21.**

**ISSUE 11:** The entity that actually performs the "scrub" of Charter's call lists. *See* **RESPONSE NOS. 9, 12, 15, 22.**

**ISSUE 12:** Whether Charter actually performs any "scrub" itself. *See* **RESPONSE NOS. 9, 12, 15, 22.**

**ISSUE 13:** Whether Charter undertakes any action or conduct on its own behalf to prevent calls to any member of any do-not-call list or registry. *See* **RESPONSE NO. 9.**

**ISSUE 14:** Whether the obligations and duties imposed by any of the contracts relied upon in Defendant's briefing were fulfilled. *See* **RESPONSE NOS. 20, 21.**

**ISSUE 15:** Whether Charter purchased access to the National Do-Not-Call List from a DNC List publisher. *See* **RESPONSE NO. 11.**

**ISSUE 16:** Whether any telephone numbers Charter receives as a result of a "skip trace" are ever "scrubbed" from any of its calling lists. *See* **RESPONSE NOS. 4, 5.A, 5.B.**

**ISSUE 17:** Whether Charter itself maintains an internal do-not-call list as required by the TCPA. *See* **RESPONSE NOS. 16, 17, 18.**

**ISSUE 18:** Whether Charter employees have the capability to access or update any internal Charter do-not-call list. *See* **RESPONSE NO. 17.**

**ISSUE 19:** The method and procedure by which Empereon updates any Charter specific do-not-call list. *See* **RESPONSE NO. 20,**

**ISSUE 20:** Whether Mr. Simmons made a do-not-call request during his January 9, 2015 call to Empereon. *See* **RESPONSE NO. 31.**

**ISSUE 21:** The content of Mr. Simmons's January 9, 2015 call to Empereon. *See* **RESPONSE NO. 31.**

**ISSUE 22:** What "scrubs," if any, are performed by Empereon on Charter's behalf. *See* **RESPONSE NO. 22.**

**ISSUE 23:** Whether Charter trains any of its employees on compliance with the applicable do-not-call regulations.

**ISSUE 24:** What the existing business relationship rules used to "scrub" Charter's number lists consist of. *See* **RESPONSE NOS. 5.A, 12.A, 14, 25, 25.A.**

**ISSUE 25:** Which entity makes the determination that a telephone number has an existing business relationship with Charter. *See* **RESPONSE NOS. 5.A, 9, 12.A, 13, 14, 15, 25.A.**

**ISSUE 26:** Which entity determines telephone numbers that Charter chooses to call. *See* **RESPONSE NOS. 13, 16, 22, 25.A.**

**ISSUE 27:** Whether Charter consistently followed its own policies. *See* **RESPONSE NOS. 6, 8, 18, 20, 21.**

Respectfully submitted,

**MICHAEL SIMMONS**, individually and on behalf of all others similarly situated,

Dated: December 11, 2015        By: s/ J. Dominick Larry
                                  One of Plaintiff's Attorneys

                               Benjamin H. Richman (phv07173)
                               brichman@edelson.com
                               J. Dominick Larry (phv07148)
                               nlarry@edelson.com
                               EDELSON PC
                               350 North LaSalle Street, Suite 1300
                               Chicago, Illinois 60654
                               Tel: 312.589.6370
                               Fax: 312.589.6378

                               Jonathan M. Shapiro (ct24075)
                               jshapiro@shapirolawofficesct.com
                               SHAPIRO LAW OFFICES, LLC
                               104 Court Street
                               Middletown, Connecticut 06457
                               Tel: 860.347.3325
                               Fax: 860.347.3874
                               *Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 11, 2015, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

s/ J. Dominick Larry